So this is case number 20-2270, Thayalan. Is it Slipikoff? Am I pronouncing that correctly? You are, Your Honor, yes. Mr. Slipikoff, good morning. Morning. Good morning, Your Honor. Brian Slipikoff on behalf of Petitioner. I'd like to reserve three minutes for rebuttal. Sure. Your Honor, the board rejected Petitioner's application for asylum and withholding of either past persecution or a well-founded fear of future persecution. The board was wrong here on both counts, and this court should vacate that decision and remand. Twice in the last year, this court has been confronted with decisions from the board holding that an asylum applicant had failed to demonstrate the existence of persecution based on acts of violence perpetrated against them because the acts were isolated, because they didn't result in serious physical injury. Let me ask you, Mr. Slipikoff, one of the cases I'm sure you're relying on is Doe. So are the facts in this case analogous to the facts in Doe? I would say certainly in the particular, Your Honor, no. I mean, the violence perpetuated on the applicant in Doe was certainly more severe than the violence you see here. I would say, frankly, that the facts of Blanco are actually closer to the facts here. In Blanco, you had an individual who was detained for approximately 12 hours and was beaten by the Honduran police. So that, I would say the facts there are probably closer than the facts in Doe. I mean, obviously, the petitioner in Doe was chased with a machete, was threatened during that with death. I wouldn't quite equate that here. I would say this case is closer to Blanco. But in Blanco as well, the court held that the board had erred in failing to give appropriate weight to the acts of violence perpetuated against Blanco. And also, I'd say in Blanco, as the government pointed out in its brief, the court noted that Blanco was not an isolated incident because there had been threats against Blanco. That's true. But the court said, and I quote, setting aside those threats, the board failed to give proper weight to the physical violence that had been perpetuated against Blanco. The board, in this case, engaged in the same analysis, the same mistakes that were prevalent in both Doe and Blanco, notwithstanding the factual differences. The government and the court forcefully rejected mechanical reliance in those cases on snippets of languages from cases like Bocce versus Gonzalez, Cabinda versus Attorney General, which characterize acts of persecution as something less because they were one-off or because the victim was not so physically injured that they required immediate medical attention. I note that that theme, you can see that theme as well in the court's panel decision last year in Herrera-Reyes. Because there, while the issue was somewhat different because that was a threat case, the court noted that the BIA is placing too much emphasis in its evaluation of whether past persecution had occurred on the requirement there being physical injury and physical violence. Well, okay. We took issue with that in Doe, but threats obviously don't involve medical injury. We made clear the threats can be cognizable. But Doe was a case in which there were multiple threats followed by a beating. And those facts are much more intense, and there's much more of a pattern there. Doesn't the lack of a corresponding death threat here mean, set aside no medical injury required, but still the suggestion that there's several things that happen in Doe, doesn't that mean that Doe is distinguishable on its facts? Certainly, Doe is different on its facts, Your Honor. But I would say that if the court were to look at Doe, the court went through each of these items individually and determined that the board erred in each of them. The court first determined that the board erred in determining that this was an isolated incident, and therefore, where there was no need for medical attention, and therefore, there was no persecution. Then the court also went on to do analysis of the in Doe, as well as in Blanco, was careful to separate out these points. Obviously, when they're blended together, it creates an even more compelling case for persecution when you have intermittent escalating threats. But when you look at them, the court looked at them individually as well as together as the court has indicated is required. Okay. What about the past persecution, if I understand this correctly, took place some 14 years ago? Do we bake that into the equation? No, Your Honor, you don't bake that into the equation because under the regulation, if the petitioner shows past persecution, it's the government's burden to show that changes in the country have made that past persecution no longer relevant. Since the board in this case found no past persecution, it never put the government to its burden, which is why we set forth in our brief that there should be a remand for the board to make that determination in the first instance. As Your Honors have hit on, the government's brief suggests that threats are the key in this case because that's what Blanco or Doe. But as I said, in both cases, the court looked at individually the issues of serious physical injury separate and apart from threats. It said, as I said in Blanco, it said, quote, setting aside the board's misunderstanding that the threats in Blanco were part and parcel of the injury. It said that the board erred in making a determination that because the individual had been abducted and beaten, but the beating wasn't severe because all that was required was Tylenol and some rest. In that case, Blanco was, as I said, detained and beaten by the police, just like here. And this relates to another problem with the board's analysis. Blanco involved an individual who was a member of a political party. He was an active member of the resistance to the governing party of Honduras. He participated in marches. In fact, that's where he was apparently abducted from, was near a march. In this case, you have an individual who is a 16-year-old boy, not involved in any of these activities, and is taken off the street. As the First Circuit held in the Ordonez-Queneau case, age has to be considered in making the determination about whether persecution occurred. Incidents which may not be persecution as perpetrated against an adult may well cross the threshold of persecution in terms of when you're looking at a child. The board mentioned the fact of chronological age, but never really addressed it in analysis. So we have a situation of what appears like happened in Blanco, where there appears to be a difference between what the board said it was doing and what it was actually doing when it analyzed the effect of petitioner's age. The fact that it mentioned that he was a minor at the time indicates it paid lip service, but didn't give the meaningful consideration to the issue that both Blanco and Herrera-Reyes indicated should be afforded when you're dealing with considerations of this type. So based on these errors alone, the board's conclusion that the petitioner failed to show past persecution on account of his Tamil ethnicity should be vacated. That finding would also give a presumption of a well-founded fear of future persecution as well. And then the case should be remanded, as I said, for the board in the first instance to make a determination as to whether or not country conditions have changed sufficiently that the presumption is rebutted. And Blanco, didn't we emphasize the cumulative nature of the persecution in addition to the abduction and beating? There were the four separate death threats to both Blanco and to his family, and they were credible because others in his circle were killed. Cumulatively, that all mattered, correct? It did, Your Honor, it did. But again, I want to point out again that the court was cumulative, and that's what Herrera-Reyes says as well, is we're not supposed to take isolated incidents separate apart, we're supposed to put it all together. But the court also wasn't saying that the beating and abduction of Blanco was not sufficient in and of itself because it said, setting aside the threats, setting aside those threats, the board erred in its consideration of the physical injury and abduction and beating that Blanco suffered. And that we contend is the same issue here. Obviously, if there were additional threats, the court would, the court would and should continue to consider those as well. But the fact that there are no threats here doesn't mean that Blanco is so distinguishable, and that doesn't fit with inside Blanco. With respect to future persecution, fear of welfare and fear of future persecution, the government's focus in its brief is on the nexus, as the court is aware, requires two showings. One is a but-for causation showing. The second is a showing that the protected ground was not something incidental to the persecutor. Here, the board determined that this was essentially an ordinary extortion case, and therefore there's no nexus. But the record compels the opposite conclusion in our view. Somewhat unique in this case is that here you have evidence directly from the persecutor's mouth, which shows their motivation. They indicated that they were, we don't have to guess why Petitioner was singled out. The credible evidence that the immigration judge and the board heard was that the EPDP persecutors told Petitioner they were singling him out because they believed that he supported the TNA, a rival political faction, and that this imputed opinion was the reason why he was targeted. Turning to the issue of animus, the evidence, the same characteristic, this imputed opinion, the board's decision in LEA holds that centrality is met when there's evidence of animus. But here, they never told him to stop supporting the TNA. They just wanted money. It doesn't look like the EPDP had anything out for ethnic Tamils. It's another Tamil party. So what makes this based on race versus just greed? I don't believe it's based on race. The issue was whether or not imputed opinion, imputed political opinion, imputed support for the TNA was the reason that the animus. And what specifically in the record says, you know, the board that, we give a lot of difference on their reading of the record. In fact, what compels the conclusion that they got it wrong? Well, obviously, first of all, you have the but-for causation issue. Then with respect to the animus, you have testimony from the petitioner regarding the differentiation between the TNA and the EPDP. The EPDP is part of the national government, whereas the TNA is part of the, is part of the, governs the state province. But the BIA said, look, the EPDP doesn't seem to care about his membership in TNA. What evidence makes that just obviously wrong, that this really was about his membership in TNA? Well, your honor, I mean, all we can go on is what the persecutors said to him. Do you have a citation in the record? Direct me to the best language in the record for this point. The best language in the record, your honor, is on pages 132 and 33 of the record, which is pages 39 and 40 of the transcript. There he describes the, there he describes the efforts by the TNA to not, excuse me, by the EPDP to not only look, to not only extort him, but extort others based on their apparent support. Didn't he say he was targeted because he had a business? Sorry, your honor. I thought he said he was targeted because he had a business. He said he was targeted because he had a business and because he had, he was believed to support a charity that was affiliated with the TNA and therefore believed to have supported the TNA. He further, he further said that, he further said that the, they asked him for money because the, the EPDP wanted to quote, take revenge on me. And when he was asked what that meant, he said, they're going to, and this is where I believe your honor was focusing. This is page 116 of the record. It says, because I'm a businessman, I work along with other Tamil groups and help the Tamil people, which was interpreted by them, given their statements as he supported the TNA. So again, just going back, we want to contrast this case to LEA where the board emphasized that no nexus existed because the evidence there showed that the extortion would have been directed at anyone who could have given the cartel an outlet to sell drugs and not just those in the protected group. But here there's, there's, there's not a basis in the record to of motivation to seek out TNA supporters. Okay. When I, when I look at 132, there's some suggestion that it's, we're getting attacked because we're Tamils, but you said your claim is not that it's because of Tamils, it's because of political opinion. And then it's a bar owner. He was running a business as well. And then the, he was asked for money. He didn't have money with him. I'm sorry, your honor. I meant pages 130 and 131, not 132 and 133. Okay. 130 and 131. Yes. You asked me for money because you were a business owner because I was doing business. They were falsely accusing me for working for the TNA and paying TNA the money. Okay. That's, that doesn't compel a contrary reading. You denied paying TNA the money. So how's that about political opinion, as opposed to the next page goes on, like it's business owners, you're paying, maybe there's a suggestion of attack for Tamils, which you've just disclaimed, but I don't see 130 to 131 as compelling the conclusion that this was because of, he was a TNA supporter. It's just, he would have been extorted by the TNA. Hey, you can pay TNA. You can pay us. What makes this because of political opinion there? Well, your honor, I would say that the, the evidence from the, the evidence of the testimony shows that, yes, he was where your honor just read that, that testimony, that testimony indicates that while he was, while the TNA or excuse me, while the EPDP may have been focusing on business owners who supported the TNA, the two are linked based on what they're based on their statements. You even if one's so they're paying one 16. Okay. You're working with TNA. You're giving them money. So give us money. All right. So you're reading that as political opinion. I see that on one, one 16, where it's business connected with business owner, but then around one 30, one 32, again, there's some reference to TNA, but it's also connected with your business owner and you're paying money. So you're saying this has to be read as political opinion, but the BIA reads it as you're, you're just paying money. They're not saying you have to stop paying to TNA. I couldn't just be, you have, you have the financial wherewithal to pay both of us. So pony up. Well, I think, I think given, given the situation that you have two rival political parties, when the EPDP is, is demanding supporters of the TNA pay that, pay the EPDP money, that'll necessarily, I can see your argument that if the board had read that, read it that way under our deferential review of facts, we might uphold that, but this seems to lean the other way. And it certainly isn't so clearly about political opinion. They don't like our positions. These two groups are, or they want us to leave this party that it compels a contrary conclusion. So really what you're depending on is the, you know, the board got, got the standard wrong. You know, the one central reason you know, which is, which is the correct standard. If they made a legal error, this would be different. But if it's just the reading of the record, you've got a really uphill battle here. I, I, I, in candid runner, I don't dispute that. Obviously it's a standard review. If the court concludes that the record supports the board's reading, even if, even if it believes my reading is better, I will agree that the court, that, that, that the court can't rule in my favor on that issue. But I think the record does support my view. Your honor, I believe I've gone past my time. With respect to the last two points, the board didn't, the government didn't really address those issues in its brief. It focused on the issue of nexus. So I'm comfortable resting on my brief on those points and I can address anything the government has in rebuttal. Thank you, Mr. Slipika. Ms. Bowen. Yes, your honor, may I please support Jennifer Bowen on behalf of the respondent attorney general. The record here does not Of course, the claim for convention against torture protection under convention against torture has been waived. First, with respect to past persecution, as the court noted, the facts here are not analogous to those presented in Doe or Blanco, where the court in both cases really focused on the cumulative effects in both cases of the physical harm and the threats. Okay, Ms. Bowen, my concern is the boards in Doe, we said it was a legal error for the BIA to say a single beating that doesn't require going to the hospital can't establish past persecution. And here on the second page of the board's decision, they got a parenthetical that reads Doe as to the contrary, almost. So how did the board get it right if it appears to have misread Doe's holding? I mean, I guess this is on, where is it, page two of the board's opinion. The parenthetical says, recognizing that isolated incidents of beatings that do not result in serious injury do not rise to the level of persecution. Yes, Your Honor, because I believe that Doe did say that the board committed legal error for finding that a single beating without a severe physical injury to the petitioner was dispositive there. But it was in the context of a case in which there were cumulative injuries and cumulative threats. And the court has repeatedly recognized, as in Blanco, that the threats to life, confinement, torture, and economic restrictions must be so severe that they constitute a real threat to life or freedom. There's a baseline that has to be met to show past persecution. And it was petitioner's burden to make that showing. And here, where he alleges that he was detained for two hours and struck in the head and abdomen, he didn't meet that baseline. So while the quote to Doe is a little perhaps not exactly on point, it doesn't mean that the board erred or that the record compels a contrary conclusion here. It's interesting because you say quote, and that's actually quite accurate, that this is basically a quotation, but it didn't put it in quotation marks and put it into the context of the case. It's sloppy. Yes, Your Honor. But that sloppy does not mean the record compels the reversal of the board's decision. Then with respect to the well-founded fear of future persecution, again, petitioner bore the burden of showing a nexus. Here he testified that he was targeted because, quote, because he was doing business. This is at page 130 of the record, and because they believed he was giving money to the TNA. He does not allege at any point, despite his burden, to make the showing of a well-founded fear that they demanded he stop paying the TNA, that he change his vote, that he do anything other than what he was already doing except for give the EPDP money as well. And therefore, he hasn't shown that it was anything more than a small factor. And if his political opinion was a factor at all, he has not met his burden of showing that it was anything more than a small factor influencing their motives, and has therefore not met his burden such that, once again, the record does not compel the reversal of the agency's denial of asylum and therefore withholding of removal, which of course is a higher burden of where he didn't show the well-founded fear. And because that is fatal to his claim, the court need not get into address any other basis for finding he failed to meet the well-founded fear burden. Back to past persecution for a minute. What do you make of the fact that what do you make of the fact that Phelan was only 16 at the time of that beating? Yes, Your Honor. The board does acknowledge his age, but finds even when acknowledging his age and taking that into consideration, the harm that was alleged and having been detained for two hours and hit, struck, was still not sufficient to meet that baseline for persecution. It still was not sufficiently severe, even when taking into account that he was 16. If the kind of abuse that he experienced had happened to a 21-year-old, and if it were not past persecution, does the fact that the same abuse applied to a 16-year-old make a difference? Could it have become persecution if you're 16, if not when you're 21? Your Honor, I don't know how the board would have addressed this if he had been 21. I can only assume that if he didn't meet it at 16, he wouldn't have met it at 21. My question is actually the reverse. If you don't meet it when you're 21, could you meet it when you're 16? Your Honor, a set of facts that we don't have here could possibly not meet it at 21, but meet it at 16. That's not what we have here. Instead, what we have here is the agency looking at what the petitioner put forward, given his burden of proof, and finding that even though he was 16 at the time, he still did not meet his burden of proof. And there's nothing in the record to compel the reversal of that conclusion. There's no evidence of ongoing... Yeah, it seemed like it was a one-off, not cumulative. Yes, Your Honor. If the court doesn't have any other questions, the respondent will rest on his brief. Thank you, Ms. Bowen. Mr. Slipika. Thank you, Your Honor. A couple brief points. If one looks at Doe and one looks at Blanco, yes, those are cases in which there were threats. Yes, those are cases in which the court ultimately analyzed the cumulative effect of those threats combined with the physical mistreatment. But I want to point out that both Doe and Blanco, the court was careful to identify that the physical mistreatment that the board erred in determining that a single incident of physical mistreatment in which there's no serious injury and no medical attention was required was erroneous as a matter of law. If you look at Doe...  Can it be true that isolated incidents that don't result in serious injury are not always past persecution? But they might be, like they were in Doe. They might not be like they were in, let's say, Cabinda. They can both be true at the same time, right? It just depends on the fact. Of course, Your Honor. Of course. But I would say if you look at the board's decision here, the board would... If you look at the board's citations, it cited Doe and cited the language from Doe, followed by a citation from language from Chen. The effect of those citations, if you look at them together, is it adheres to the same flawed analysis that applied in Doe, which is that this is a single incident, there was no physical injury, therefore it's not persecution. That could be correct, right? Depending on the case. Certainly, Your Honor. The fact that any incident could or could not be persecution based on the specific facts. I guess the point I'm making is that the court made a... Is that the board engaged in the same legal error in determining a cutoff and saying, this is a single incident. He wasn't severely injured, he didn't get medical attention, therefore it's not persecution. And that was exactly the error the court found in Doe. If one looks at Doe at page 146, the court, after going through the threat analysis and referencing the Chivarria case as well as Herrera-Reyes, both of those were threat cases, said even though petitioner would succeed in the absence of any injury, physical injury under it then went on to analyze the court's errors in determining that there had been no physical injury and therefore no persecution. Because the individual had been able to escape, because the individual had been able to succeed without getting medical treatment. And then the court on the same page at the end of that section says, reversed because the board committed legal error by finding a single beating without severe physical injury was dispositive. And again, that's our contention as to what happened here if you look at the board's opinion and its citations. Do you allow that there are factual differences between what happened to the guy in Doe, where he was either going to be set on fire or beheaded and his own father was calling for his death and there were mobs about to kill him and so on. And what happened to Pham in 2007? As I said before, Your Honor, of course, the facts of Doe are much more egregious. But the fact that the facts are different doesn't change the fact that the board applied the wrong legal standard. And again, I think this case is actually pretty comparable to Blanco, notwithstanding the fact that there were threats in Blanco. But again, the court, I believe, if you look at Blanco addressed those separately and said, and indicated that each in their own sufficient. But certainly together, they were sufficient to demonstrate past persecution. Thank you, Your Honor. Thank you. And counsel, I want to thank you and your firm for your pro bono efforts in this case. It is greatly appreciated by all of us. Your efforts, Mr. Slipikoff and the support Dwayne Morris gave you. Thank you very much. Yep. All right, folks, have a great rest of your day.